UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HORIZON COMICS PRODUCTIONS, INC.,

                        Plaintiff,

           -v-

MARVEL ENTERTAINMENT, LLC, MVL
FILM FINANCE, LLC, MARVEL
WORLDWIDE INC., MARVEL STUDIOS,
LLC, DMG ENTERTAINMENT LLC,
PARAMOUNT PICTURES CORP., WALT
DISNEY STUDIOS MOTION PICTURES, INC.,
AND DOES 1 THROUGH 10, INCLUSIVE,

                        Defendants.

16-CV-2499 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Horizon Comics Productions, Inc. ("Horizon") filed a complaint in this action against Marvel Entertainment, LLC; MVL Film Finance, LLC; Marvel Worldwide, Inc.; Marvel Studios, LLC; DMG Entertainment, LLC; Paramount Pictures Corp.; and Walt Disney Studios Motion Pictures, Inc. ("Marvel" or "Defendants"), on April 4, 2016, alleging copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq*. (Dkt. No. 2 ("Compl.").) Marvel moves pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) to dismiss the Complaint, on the grounds that the elements of Plaintiff's works alleged to have been copied are not protectable as a matter of law and are, in any event, not substantially similar to Defendants' works. For the reasons that follow, the motion is granted in part and denied in part.

**I.    Background**

The following facts are taken from the Complaint, except where otherwise noted, and are presumed true for the purposes of this motion.

In 2001, comic book artists Ben and Ray Lai, the brothers who own Horizon, created a

1

comic book series called *Radix*. (Compl. ¶¶ 2, 19.) The characters in that series wear "highly-detailed, futuristic, armored, and weaponized suits of body armor to fight enemies." (*Id.* ¶ 19.) The Complaint identifies the registrations for Plaintiff's copyrights. (*Id.* ¶ 6).

Defendants are the copyright holders, creators, and distributors of the *Iron Man* and *Avenger* movie franchises. (*Id.* ¶ 1.) In those films, the character Iron Man wears "mechanized body armor" that Plaintiff alleges "appropriates the copyrighted artistic works of the Plaintiff without authorization or attribution." (*Id.* ¶ 4.)

Although the Iron Man character first appeared in 1963, the armor worn by the character has changed over the years from a "spandex-like attire and minimal armor" to the "fully mechanized suit of body armor" depicted in the *Iron Man* and *Avenger* movies. (*Id.* ¶¶ 24-25.) According to the Complaint, this change took place after the Lai brothers submitted the *Radix* art to Defendants and were hired by Marvel as artists. (*Id.* ¶¶ 3, 29.)

Horizon alleges that Marvel infringed its copyright by copying elements of Horizon's illustrations for use in the films. (*Id.* ¶ 36.) Marvel moves to dismiss on grounds that the elements of Horizon's works alleged to have been copied are not protectable as a matter of law and are, in any event, not substantially similar to Defendants' works. (Dkt. No. 36.)

## II.     Legal Standard

"To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 290 (S.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all

claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Pyatt v. Raymond*, No. 10 Civ. 8764, 2011 WL 2078531, at *3 (S.D.N.Y. May 19, 2011), *aff'd*, 462 Fed. App'x 22 (2d Cir. 2012)).

"In general, our review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Id.* (internal quotation marks omitted) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). "Nonetheless, 'in copyright infringement cases the works themselves supersede and control contrary descriptions of them.'" *Id.* (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)).

"In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)). "Although substantial similarity analysis often presents questions of fact, where the court has before it 'all that is necessary to make a comparison of the works in question,' it may rule on 'substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss.'" *Effie Film*, 909 F. Supp. 2d at 290-91 (quoting *Peter F. Gaito*, 602 F.3d at 65). This is because, in considering whether the works are substantially similar, "what is required is only a visual comparison of the works." *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991); *see Peter F. Gaito*, 602 F.3d at 64.

"The determination of the extent of similarity that will constitute a *substantial*, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one

3

that is the least susceptible of helpful generalizations." 4 Nimmer on Copyright § 13.03[A] (2015); *see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) ("The test for infringement of a copyright is of necessity vague."). Where the disputed works are entirely protectable, "[t]he standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (internal quotation marks omitted) (quoting *Hamil Am. Inc.*, 193 F.3d at 100).

However, when a work contains both protectable and unprotectable elements, the analysis is "more discerning." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 141 (2d Cir. 1992). In particular, the Court "must attempt to extract the unprotectible elements from our consideration and ask whether the *protectible elements, standing alone*, are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995). For example, "it is well established that 'scènes à faire,' which involve 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic' are 'not copyrightable as a matter of law.'" *Effie Film*, 909 F. Supp. 2d at 292 (quoting *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980)). Where the copyright holder alleges substantial similarity, therefore, the Court looks to "whether the alleged 'similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking,'" including scènes à faire. *Effie Film*, 909 F. Supp. 2d at 291 (quoting *Peter F. Gaito*, 602 F.3d at 67).

Yet even when engaging in the "discerning" substantial similarity inquiry, courts "have disavowed any notion that we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Id.* at 292 (alteration

4

in original) (internal quotation marks omitted) (quoting *Peter F. Gaito*, 602 F.3d at 66). The inquiry is more holistic, as the Court "compar[es] the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Peter F. Gaito*, 602 F.3d at 66). For copying to be unlawful, the "works must share a similarity of expression, such as 'similarities of treatment, details, scenes, events, and characterization,'" *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 309 (S.D.N.Y. 1999) (quoting *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976)), or a similarity in their "total concept or feel," *id.* (quoting *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996)). Such an approach allows for a finding of copyright infringement where a defendant has "parrot[ed] properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another." *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003). In this way, the Court's duty is to focus on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves Inc.,* 71 F.3d at 1004 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 358 (1991)).

**III.   Discussion**

In moving to dismiss, Marvel argues both that the alleged similarities between the works are not protectable expression and that no reasonable juror could find substantial similarity. *See Peter F. Gaito*, 602 F.3d at 63 ("[I]t is entirely appropriate for a district court to resolve [the question of substantial similarity] as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" (quoting *Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 240 (2d Cir. 1983)).

Marvel interprets the Complaint to assert copyright infringement premised on the "basic assertion . . . that the Iron Man suits are substantially similar to artwork in the Radix Materials because both Iron Man and at least one character from *Radix* wear 'highly detailed, mechanized suits of body armor,'" a concept which it argues is too general to qualify for copyright protection. (Dkt. No. 36 at 11 (quoting Compl. ¶¶ 2-4).)  For its part, Horizon accuses Marvel of mischaracterizing the Complaint and clarifies its infringement position with respect to the Iron Man promotional materials.  In particular, it notes that its allegations of substantial similarities are between (1) a promotional poster for *Iron Man 3* and a promotional piece of art for the *Radix* comic (Dkt. No. 45 at 6 (citing Compl. Ex. B)); and (2) the artistic depictions of the mechanized body armor used in the Iron Man films and the mechanized armor used in the *Radix* comics (Dkt. No. 45 at 5-6).[1]  The Court addresses each in turn.

A.   **The Promotional Art**

The Complaint alleges that "Defendants' poster promoting Iron Man 3 . . . is a copy of a promotional piece of art for the Radix comic." (Compl. ¶ 31.)  Exhibit B to the Complaint displays the images side-by-side:

---

[1] Horizon explicitly disclaims that its copyright infringement allegations stem from the plot line of the *Radix* comics or its characters.  (*See* Dkt. No. 45 at 4 n.1; *id.* at 10.)

 

(Compl. Ex. B.)

The Court first notes that it will apply the "more discerning" substantial similarity analysis because the work contains both protectable and unprotectable elements, as discussed below. *Laureyssens*, 964 F.2d at 141. In order to grant this motion to dismiss as a matter of law, therefore, the Court must find that "no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito*, 602 F.3d at 63 (quoting *Warner Bros.*, 720 F.2d at 240). The Court first "attempt[s] to extract the unprotectible elements from our consideration and ask[s] whether the *protectible elements, standing alone*, are substantially similar." *Knitwaves Inc.*, 71 F.3d at 1002.

Here, Marvel argues that both the "idea of a highly mechanized suit of armor" and the

7

"fighting pose"[2] are unprotectable elements. (Dkt. No. 36 at 11, 17.) The Court agrees: both the mechanized suits of armor and the pose depicted in the posters are scènes à faire, and therefore unprotectable, in the comic book or superhero genre.

First, Horizon does not dispute Marvel's argument that the concept of a mechanized suit of armor to fight enemies is unprotectable. (*See* Dkt. No. 45 at 8.) The Court concludes, therefore, that the presence of a mechanized suit of armor in both images in Exhibit B to the Complaint cannot give rise to a finding of substantial similarity. *Cf. Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 847 (D. Minn. 2005) (finding that "superhero capes, leotards, masks, chest emblems, boots, belts, and flared gloves" are "stock elements of the superhero genre."), *aff'd*, 430 F.3d 901 (8th Cir. 2005).

Second, the "fighting pose" depicted in the photos is a scène à faire in the superhero or comic book context. Indeed, when evaluating a claim of copyright infringement in action figures, "the Court of Appeals [for the Second Circuit] has held that a fighting pose is an unprotectable idea under copyright law." *Cabell v. Sony Pictures Entm't, Inc.*, 714 F. Supp. 2d 452, 459 (S.D.N.Y. 2010) (citing *Mattel, Inc. v. Azrak–Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)), *aff'd*, 425 F. App'x 42 (2d Cir. 2011). In *Azrak–Hamway*, the Second Circuit held that a 5-½ inch Warlord doll did not infringe a 5-½ inch Masters of the Universe Doll. That court concluded that, "[t]hough the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in what since Neanderthal times has been a traditional

---

[2]  The parties dispute whether the pose depicted in Exhibit B to the Complaint is fairly described as a "fighting pose." (*See* Dkt. No. 45 at 20 (referring to the pose as a "getting up after being knocked down" pose)). The Court does not find that this is a dispositive distinction as both descriptions warrant the same result: this is a pose and posture common to the superhero and comic book genres.

fighting pose."[3]  *Azrak–Hamway*, 724 F.2d at 360.

Turning to the particularized expression of the idea, Horizon attempts to draw comparisons between the images—beyond those similarities that are attributable to the unprotectable pose or the fact that each character is wearing mechanized armor—by reference to the hairstyle of each character, the presence of blue lights in the suit, similar notches in the shoulder covers, and the color of the suits.  (*See* Dkt. No. 45 at 15 (detailing the "Elements of Substantial Similarity between *Iron Man 3* Poster and *Radix* Promotional Art").)

Horizon does identify some similarities between the suits; however, they are not identical.  First, the hairstyles of the characters are quite similar.  Marvel contends that the Radix

---

[3]  Horizon argues that the *Azrak-Hamway* case is "inapposite because it was before the court on a motion for preliminary injunction, which included an evidentiary hearing, and not on a motion to dismiss."  (Dkt. No. 45 at 7.)  In that same vein, Horizon argues generally that a finding that the "fight pose" is a scène à faire is premature, as no evidentiary hearing has taken place and "there is no basis for Defendants' contention that the pose of the figure is an unprotectable element.  (*Id.* at 20.)  It argues that "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff."  (*Id.* (quoting *Iqbal*, 556 U.S. at 678).)
  However, the Court does not find compelling the argument that the procedural posture of *Azrak-Hamway* detracts from its relevance in this case.  *See Eng v. Baldwin*, No. 14 Civ. 1644, 2014 WL 2465763, at *2 (E.D.N.Y. May 30, 2014) (relying on *Azrak-Hamway* in an order on a motion to dismiss for the proposition that "generalized concepts . . . cannot make out an action for infringement of material protected by the copyright laws").
  Second, a determination of scènes à faire is appropriate at the motion-to-dismiss stage. *See, e.g.*, *Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 163 (S.D.N.Y. 2015) (granting a motion to dismiss based on a determination of scènes à faire).  This is analogous to the patent eligibility inquiry under 35 U.S.C. § 101 of the United States Patent Laws.  In that context, the Federal Circuit has held that, "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion," unless "plausible factual allegations preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (citations omitted).  Horizon makes no plausible factual allegation that the pose in question is anything other than a scène à faire, while Marvel convincingly argues that such a pose is commonplace in the genre.  *See generally* Duncan Robson, *Three Point Landing*, YOUTUBE (May 5, 2012), https://youtu.be/mgOtPXDyKjA.

character "wears a familiar crew cut, with the hair immediately above his ear buzzed to the point of nearly being clean-shaven, whereas Iron Man does not wear a crew cut in any respect." (Dkt. No. 46 at 5 n.9.)  Upon inspection, however, though there are some differences, the haircuts do present a similar look.  Second, both suits make use of the element of blue lights.  The blue lights present in the suits may be executed in different ways—Iron Man's suit shows a round light emitted from one location, directly at the center of the chest, while the Radix suit shows four diamond-shaped blue lights around the chest as well as a light on the bent left knee—but both do have blue lights in the chest plate of the suit.  Third, the notches in the shoulder covers differ in their details, though they do look generally similar.  Iron Man's shoulder is capped with a boxy, gold shoulder cover, while the Radix suit is rounded.  Fourth, the color of the suits differs.  Iron Man's suit is primarily gold and red, while the Radix suit is primarily blue and gray, with red accents limited to the chest and lower abdomen.  However, given the lighting and shading in the images and the shared use of a similar shade of red, the coloration of the images does evince some similarity.  These specific similarities and differences are significant, but do not end the inquiry.

The Court must look beyond the works as dissected "into their separate components," and must "compar[e] the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." *Effie Film*, 909 F. Supp. 2d at 292 (second alteration in original) (internal quotation marks omitted) (quoting *Peter F. Gaito*, 602 F.3d at 66).  The Court concludes that the works do "share a similarity of expression" or a similarity in their "total concept or feel" sufficient to survive a motion to dismiss. *Hogan*, 48 F. Supp. 2d at 309 (quoting *Williams*, 84 F.3d at 589).  This is not a case where only non-copyrightable elements exist in the work, nor is it one where the Court can conclude, at this stage, that "*no reasonable jury*, properly instructed, could find that the two works are

substantially similar" based on their "total concept and overall feel." *Peter F. Gaito*, 602 F.3d at 63 (emphasis added). As such, Marvel's motion to dismiss Horizon's claim of copyright infringement as between the promotional poster for *Iron Man 3* and the promotional piece of art for the *Radix* comic, as shown in Exhibit B to the Complaint, is denied.

B. **The Mechanized Body Armor**

Turning to the allegation that the artistic depictions of mechanized body armor used in the Iron Man film copies from the *Radix* comics, the Court concludes that Plaintiff has failed to state a claim. This is so because the use of a mechanized suit of armor, as described above, is a standard scène à faire for the superhero genre. Moreover, the works themselves demonstrate that no reasonable jury could find a "substantial similarity" between the protectable elements of the suits as a matter of law.

Horizon argues that "the *Radix* and *Iron Man* artwork possess similarities that go far beyond both depicting a generic, armored superhero," giving rise to its claim of copyright infringement based on Marvel's alleged copying of the mechanized body armor from the *Radix* comics for use in its *Iron Man* films. (Dkt. No. 45 at 9.) Horizon is claiming copyright protection in the "particular unique artistic rendering of the *Radix* armor." (*Id.* at 10.)

Beyond the elements discussed above, Horizon relies on images that it argues demonstrate substantial similarity between certain features of the mechanized body armor of the characters, such as the boots and shin covers:

11



(Dkt. No. 45 at 16 (citing Dkt. No. 37 ("Litvak Decl.") Exs. O-63, F).)

First, the Court notes that "manipulat[ing] the images . . . by cropping them, rotating them, and the like" are "tactics" that "cannot be used to bolster an infringement claim." *Dean v. Cameron*, 53 F. Supp. 3d 641, 647-48 (S.D.N.Y. 2014). Even putting that aside, however, no reasonable juror could find that there is substantial similarity between the Iron Man and Radix boots as depicted. The boots have completely different colors (Radix: blue and gray; Iron Man: red and gold); the heels appear to differ (Radix: heel with spur; Iron Man: gold square near ankle); the top-foot is of a totally separate nature (Radix: angular and receding into the shin cover; Iron Man: gold and protruding from the toe box); and the toe boxes are differently sized and shaped (Radix: rounded and covers only the toes; Iron Man: boxier and covers more of the

12

foot). There appears to be no significant overlap in the expression of the idea of an armored boot as implemented by the two entities.

Horizon further alleges that the shin design of the characters' armor is "very similar," and provides the following images in support:



(Dkt. No. 45 at 17 (citing Litvak Decl. Exs. O-63, B, & C-8).) The difference in these images is

readily apparent: they vary significantly in color and design.[4]  Even looking only at the cropped images, the images are obviously distinct.  Iron Man's shin is asymmetrical with vents or some other functional element on the lateral side, whereas the Radix characters' design is more symmetrical.  Iron Man sports a thin silver rectangle that separates the gold on his shin from the gold on his foot, no such element is found in the Radix characters' armor.  And Iron Man's gold shin covering has a divot not found in the Radix characters' armor.  These and more differences belie any claim of copyright infringement.

An average observer would clearly see the dissimilarities between the works and would not conclude that one was copied from the other.  *See Cabell*, 714 F. Supp. 2d at 460.  The mechanized armor employed by Marvel in its Iron Man and Avengers films are, as a matter of law, not substantially similar to those created by Horizon, and no reasonable juror, properly instructed, could conclude otherwise.

## IV. Conclusion

For the foregoing reasons, Marvel's motion to dismiss the complaint is GRANTED IN

---

[4] An examination of the uncropped images also demonstrates that the suits also differ in significant respects.  *Dean*, 53 F.Supp.3d at 647 (the proper inquiry is "whether a lay observer would consider the works as a whole substantially similar to one another" (citing *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996)).  The Court identifies a few key differences, though there are many more that can be detailed: Iron Man wears a helmet; the colors differ; Iron Man sports large, metal straps on his shoulder; there is no blading on Iron Man's arms or legs (nor on one of the Radix character's arms or legs); Iron Man's chest has a circular blue orb (the Radix characters either have multiple blue lights or none at all); and Iron Man's abdomen is covered in crescent-shaped gold plates.  (*See* Dkt. No. 46 at 3-4.)

PART and DENIED IN PART.

    The Clerk of Court is disrected to close the motion at Dkt. No. 35.

SO ORDERED.

Dated: March 27, 2017
       New York, New York

                                        _____
                                                J. PAUL OETKEN
                                          United States District Judge